**Howard BACON, and Private Officer, Inc., Plaintiffs-Appellees,**

v.

**Joseph PATERA, Patrolman, Donald Whitecar, Patrolman, Defendants,**

**Clayton Crook, Defendant-Appellant.**

No. 82–3658.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1983.

Decided Sept. 13, 1985.

Thomas A. Dugan, argued, Alexander M. Andrews, Cleveland, Ohio, for defendants/defendant-appellant.

Michael E. Banta, argued, Cleveland, Ohio, for plaintiffs-appellees.

Before MARTIN and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Clayton Crook appeals a judgment against him for depriving plaintiffs of their constitutional rights in violation of 42 U.S.C. § 1983 and for malicious prosecution. Crook is the Chief of Police for the city of Brunswick, Ohio. Plaintiff Howard Bacon is a licensed private investigator in the state of Ohio. Mr. Bacon is also president of his own corporation and co-plaintiff in the case, Private Officer, Inc., which provided security services to businesses in northern Ohio.

In the fall of 1976, Bacon agreed to provide security services for several restaurants operated by Perkins Pancake & Steak House, Inc. One of those restaurants was located in Brunswick. In preparation for his new job, Bacon arranged to meet with Chief Crook on November 16, 1976. Ohio law requires that all private investigators doing business in a municipality must report to the local police chief within twelve hours of their arrival. *See* Ohio Rev.Code § 4749.05(B). At that meeting, Chief Crook informed Bacon that he and his employees would be required to obtain a private police officer's commission pursuant to Chapter 840.01 of the Brunswick Codified Ordinances before they could provide security services in Brunswick. Each commission costs $50. In reply, Bacon told the chief that he did not desire such a commission and that he believed that the City could not require him to obtain one. Chief Crook then stated that if Bacon attempted to work without a commission, he would be arrested and cited for violation of the ordinance.

Thereafter, on five separate occasions, Bacon was cited for violating the Brunswick ordinance while working at the Perkins Restaurant. Chief Crook delivered the first citation himself. The remaining citations were served by officers on Crook's staff. Bacon was also required to appear in the Brunswick Mayor's Court on three occasions to answer to the charges. Each time, Bacon pled not guilty, demanded a jury trial, and posted bond. The charges were eventually consolidated, and the case was transferred to the Medina Municipal Court for trial on February 1, 1977. On that date, the trial judge dismissed the charges against Bacon because he had violated no law. The trial judge found that the ordinance relied upon by Chief Crook only granted him the authority to *issue* private police commissions but not the authority to *require* that private investigators obtain such commissions before providing police services. As a result of these legal entanglements, however, Bacon lost his security contract at the Brunswick Perkins restaurant.

On January 31, 1978, Bacon filed this section 1983 complaint against Chief Crook, Brunswick Mayor Helen West, Brunswick Prosecutor Robert Tinl, and Patrolmen Joseph Patera and Donald Whitecar, charging that these defendants, acting under color of state law, had deprived Bacon of various constitutional rights: (1) his right to freedom from unlawful searches and seizures (fourth amendment); (2) his right to be free from police harassment and intimidation (fifth amendment); (3) his right to be free from malicious prosecution (eighth amendment); and (4) his right to due process of law (fourteenth amendment). Bacon also filed a separate state-law claim for malicious prosecution. In addition, Bacon's corporation, Private Officer, Inc., filed its own complaint against the same defendants alleging similar offenses.

The district judge granted summary judgment for defendants Tinl and West before trial. At trial, a jury awarded Bacon $35,000 in compensatory damages and $5,000 in punitive damages against Chief Crook. The jury also awarded Private Officer, Inc. $50,000 in compensatory damages and $15,000 in punitive damages.[1] Patrolmen Whitecar and Patera were found not liable.

On appeal, Chief Crook maintains that the district court erred in not granting him

---

1. Because the jury returned a general verdict, we do not know whether they found Chief Crook liable under section 1983 or for malicious prosecution or possibly both.

a directed verdict, basically on the grounds that the plaintiffs failed to state a claim and that his good faith defenses should have precluded liability. Chief Crook further argues that even if we should find that Bacon has stated a claim, the trial judge should have at least directed a verdict against Private Officer, Inc. Finally, Chief Crook claims that the district court made a number of evidentiary errors, such as excluding evidence as to his motivation in citing Bacon and excluding the ordinance upon which he relied.

We shall first consider whether the district judge erred in not granting Chief Crook's motion for a directed verdict as to plaintiff, Howard Bacon, both as to the plaintiff's section 1983 claim and his malicious prosecution claim. We shall then consider Chief Crook's alleged evidentiary errors. Finally, we shall consider Chief Crook's argument that a directed verdict should have been granted against Private Officer, Inc.

### I. Section 1983 Claims

As was outlined above, Bacon has asserted four types of constitutional deprivations. Three of these claims are substantive constitutional claims. *See Wilson v. Beebe,* 770 F.2d 578, 583 (6th Cir.1985). Bacon's fourth claim, however, is a procedural one based purely on the fourteenth amendment. We shall consider this latter claim first.

### A. Procedural Due Process Claim.

■ To state a claim under section 1983, a plaintiff must show two things: (1) that the defendant acted under color of state law, and (2) that the defendant deprived the plaintiff of a federal right, either statutory or constitutional. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). Here, there is no dispute that Chief Crook was acting under color of state law. However, there is some question as to whether Chief Crook deprived Bacon of any federally-guaranteed right.

With respect to Bacon's procedural due process claim, Bacon is claiming that Chief Crook deprived him of his liberty without providing him due process. The liberty that Chief Crook allegedly deprived Bacon of was his right to a good reputation and his right to engage in his occupation. If the procedural protections of the fourteenth amendment are to come into play, these alleged deprivations must be cognizable as protected liberty interests. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982).

■ One of the earliest Supreme Court cases to discuss the scope of protected liberty interests is *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In that case, the Supreme Court defined liberty to include:

> not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge ... and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.

*Id.* at 572, 92 S.Ct. at 2706–07. Although later Supreme Court cases would somewhat narrow the definition of liberty interest, *see Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court has consistently recognized that the due process clause forbids arbitrary deprivation of liberty " 'where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him.' " *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)). Even in *Paul v. Davis,* where the Supreme Court refused to allow a section 1983 claim based upon injury to reputation, the Court recognized that if the damage to reputation was combined with a tangible injury such as loss of employment, a section 1983 claim could be alleged. *Paul v. Davis,* 424 U.S. at 701, 96 S.Ct. at 1160–61. Because Bacon allegedly lost his employ-

ment at Perkins as a direct result of Chief Crook's actions, he has demonstrated that a protected liberty interest was infringed.

▇▇▇ Although Bacon may have been deprived of a protected liberty interest, he must also show that he was deprived of that interest *without due process of law* to state a claim under section 1983. To prove that he was deprived of due process of law, Bacon could proceed by one of two routes. First, he could show that Chief Crook had an established procedure of prosecuting groundless criminal actions against private security officers in order to harass them and force them out of business. If Bacon could show such an established state procedure, this procedure in itself would violate due process, and Bacon could state a claim. *See Hudson v. Palmer*, — U.S. —, —, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982); *Wilson v. Beebe*, 770 F.2d 578, 583 (6th Cir.1985); *Spruytte v. Walters*, 753 F.2d 498, 509 (6th Cir.1985).

▇▇▇ In the alternative, if Chief Crook's actions were only "random and unauthorized conduct," *Hudson v. Palmer*, — U.S. at —, 104 S.Ct. at 3203, Bacon would then have to show that state remedies are inadequate. *Wilson v. Beebe*, 770 F.2d 578, 583, 584. In this case, the state remedy would be a tort claim for malicious prosecution, which Bacon has filed as a pendent claim in this suit. If this remedy is adequate, and Chief Crook's actions were "random and unauthorized," then Bacon would not state a procedural due process claim.

▇▇▇ Unfortunately, the trial court in this case made no findings with respect to whether Chief Crook's actions were the

result of an established state procedure nor did it discuss whether state remedies were adequate. We fault not the trial court for these legal errors because many of the relevant case holdings were not decided until after this case was tried. *See, e.g., Hudson v. Palmer*, — U.S. —, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Wilson v. Beebe*, 770 F.2d 578 (6th Cir.1985). Nevertheless, the case must be remanded for trial on the procedural due process claim.[2]

## B. Substantive Constitutional Claims

▇▇▇ Bacon also asserts that Chief Crook violated three of his substantive constitutional rights. First, Bacon argues that the eighth amendment prohibition against cruel and unusual punishment provides him with a federally-protected right against malicious prosecution. We do not agree. Most eighth amendment claims have involved the constitutionality of state treatment for individuals already convicted of crimes. Those few cases finding eighth amendment violations in pre-conviction conduct by the state have all involved the infliction of some kind of physical abuse. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1981) (overcrowded jails for pre-trial detainees); *Howell v. Cataldi*, 464 F.2d 272 (3d Cir.1972) (police brutality). It would require a tremendous expansion of eighth amendment doctrine to hold that simple misuse of the state's prosecutorial machinery constitutes the type of "cruel and unusual punishment" that the eighth amendment was meant to prohibit. We decline the opportunity.

▇▇▇ Bacon next argues that he has a right to be free from police harassment and

2. On remand, if Chief Crook is found to have violated Bacon's procedural due process rights, Chief Crook may still assert his qualified immunity from damages under the principles of *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), and *Davis v. Scherer*, — U.S. —, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). *See Coleman v. Frantz*, 754 F.2d 719, 726 (7th Cir.1985); *Briggs v. Malley*, 748 F.2d 715,

718 (1st Cir.1984). Under *Harlow*, an official is entitled to immunity unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Whether under the facts of this case Chief Crook should be entitled to a qualified immunity is a decision that must be made in the first instance by the trial court.

intimidation. Both the fifth and sixth amendments are cited as the source of this right. These two amendments do provide a number of protections for the accused, including the right to remain silent, the right to counsel, the right to a speedy trial, and the right against double jeopardy, which could be viewed as having as one overall purpose protecting the accused from intimidation by police authorities. Nevertheless, we believe that these specifically enumerated rights are generally adequate to assure fair treatment for defendants, and we cannot conclude that these rights create a distinct cause of action for police harassment in this case.

Bacon's final and most significant claim of substantive constitutional violation is that Chief Crook abridged his fourth amendment right against "unreasonable searches and seizures." Although Bacon was never arrested, the record does indicate that he was "cited" on five occasions when the Brunswick police served him with court summonses for allegedly violating the Brunswick ordinance on private commissions. Under standard fourth amendment analysis, a person is considered "seized" if he is unable to leave an officer's presence without permission. *See United States v. Mendenhall,* 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1876–77, 64 L.Ed.2d 497 (1980); *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). The record in this case could support a jury finding that Bacon had been seized without probable cause, and we thus find that Bacon stated a substantive fourth amendment claim under section 1983.

Although we find that Bacon stated a section 1983 claim for a violation of his fourth amendment rights, the district court did not properly instruct the jury on that claim. In fact, the jury instructions with respect to Bacon's section 1983 claims focused almost solely on his procedural due process claim. The judgment therefore cannot be upheld on the fourth amendment ground alone. The fourth amendment

claim is remanded to the district court for a new trial.[3]

## II. State Malicious Prosecution Claim

Chief Crook also maintains that he should have received a directed verdict on the state malicious prosecution claim. Chief Crook apparently does not claim that Bacon failed to present evidence as to each element of his malicious prosecution action, but instead alleges that he has proven as a matter of law that he relied on advice of counsel, which is a defense in Ohio to a malicious prosecution claim. *Reenan v. Klein,* 444 N.E.2d 63, 3 Ohio App.3d 142 (1981).

Here Chief Crook's claim is without merit. Although there was evidence that Chief Crook relied on advice of counsel, there was also evidence that Chief Crook did not fully disclose to counsel all the facts necessary to obtain accurate advice. *See id.* The district judge therefore correctly failed to grant a directed verdict on this ground alone.

## III. Evidentiary Questions

Although the district judge properly denied Chief Crook's motion for a directed verdict on the malicious prosecution claim, Chief Crook is entitled to a new trial on that claim because of two evidentiary errors. First and foremost, the district judge erred when he refused to allow Chief Crook to testify as to his motivation for prosecuting Bacon. Under common law rules, a defendant is not guilty of malicious prosecution unless the plaintiff can prove that the defendant initiated the prosecution for an improper purpose, i.e., a purpose other than bringing an offender to justice. *See Skarbinski v. Henry H. Krause Co.,* 378 F.2d 656, 658 (6th Cir.1967); Prosser on Torts § 119 at 848 (4th ed. 1971). Accordingly, it is a defense to a malicious prosecution claim that one was acting solely to enforce the laws. Here, Chief Crook's of-

---

**3.** As with the procedural due process claim, Chief Crook may assert a qualified immunity to

any fourth amendment liability. *See supra* note 2.

fer of proof showed that he would have testified, if allowed, that he believed the ordinance required private security officers to acquire a commission. This was a defense he was entitled to make. Therefore, it was error for the trial judge not to allow Chief Crook to testify as to his motivation.

■ Second, the trial court erred in not allowing into evidence the actual Brunswick ordinance which Chief Crook claimed required Bacon to obtain a private police commission. Bacon was allowed to testify as to what he believed the ordinance required. Chief Crook was not. A good argument could be made that neither Bacon nor Crook should have been allowed to comment on the meaning of the ordinance. Nonetheless, given these rulings, it was grossly unfair and prejudicial to Chief Crook not to at least allow the jury to see the ordinance in dispute and draw its own conclusions as to its meaning. Bacon's state malicious prosecution claim is therefore remanded for a new trial.

### IV. Corporate Plaintiff

■ The trial court also erred in not granting Chief Crook a directed verdict on the claim filed by Private Officer, Inc., Bacon's corporation. The record reveals no evidence to support any claim for damages to the corporation separate from damages suffered by Bacon. All of the evidence was directed towards damages suffered by Bacon as an individual. Any award to Bacon's corporation, based on the evidence submitted, would be merely duplicative. The judgment in favor of Private Officer, Inc. is thus reversed, and that claim is remanded to the district court for dismissal.

In conclusion, we reverse the judgment in favor of the plaintiffs. We remand Bacon's section 1983 procedural due process claim, section 1983 fourth amendment claim, and state malicious prosecution claim for a new trial. We remand and instruct the district court to dismiss the judgment in favor of Private Officer, Inc.